Grafton,
Mar. 7, 1950. } No. 3903.

DAVID TERRIEN

*v.*

PAWTUCKET MUTUAL FIRE INSURANCE COMPANY.

*Cotton, Tesreau & Stebbins (Mr. Stebbins* orally), for the plaintiff.

*Buckley, Zopf & Hamlin (Mr. Zopf* orally), for the defendant.

DUNCAN, J. In support of its motions for a nonsuit and directed verdict the defendant relies upon two principal contentions: that the loss suffered by the insured was not an "accidental" loss; and that the policy was inapplicable by reason of the express provisions of the "mechanical breakdown" exclusion. The defendant has also asserted that it was error to instruct the jury that the holes or depressions in the highway were "objects" within the meaning of the collision coverage of the policy. Cf. 5 Appleman, Ins. Law & Practice, *ss.* 3201-2. However, it concedes that coverage for damage resulting

from the encounter with the holes is afforded under one or the other of the two types of coverage, if such damage was "accidental" and not within the exclusion which is applicable to both coverages. We may therefore first consider the principal contentions stated above.

No serious difficulty is presented by the argument that the loss was not "accidental." It is true that the truck frame had broken on prior occasions. When the truck was first purchased in 1947 it was involved in an accident in which the frame may have been bent. In December of that year, while the truck was being used in logging operations, the frame broke on both sides just ahead of the rear wheels, and was repaired by means of steel plates bolted and welded to the frame. In June, 1948 one side of the frame commenced to buckle under the cab and similar repairs were made with the use of a four foot plate. Some ten days later a similar break appeared on the other side, and was repaired. Following the last repair, on July 13 the truck was driven about sixty-five miles to the gravel pit, loaded, and driven out. There were holes in the driveway which, according to the plaintiff's testimony, were six inches to a foot in depth, and could not be avoided, and he testified that the truck "didn't get very far" after striking them: "It broke when I hit the last one." It could be found that the truck travelled only one hundred fifty feet beyond the hole when it collapsed. The break in the frame occurred at the site of the prior breaks under the cab, just ahead of the four foot plate which had been used in repair. While the plaintiff was well aware of the prior breaks and of the repairs which had been made, it does not follow that the damage which occurred on July 13 was not accidental. Other breaks in the frame, ahead of the rear wheels, had been repaired in a similar fashion and the truck was thereafter subjected to heavy use without further mishap. While it could be found that the plaintiff's action in driving his truck over the holes was deliberate, he was not so far chargeable with knowledge that the resulting breakdown was probable, as to require a finding that he deliberately incurred the loss. The collapse of the truck could be found to be an untoward, unusual and unexpected event. What happened was well within the meaning attributed to the word "accidental" as commonly understood. I Appleman, Ins. Law & Practice, s. 391. See *Simoneau* v. *Insurance Co.*, 89 N. H. 402, 406; *Hartford Ind. Co.* v. *Wolbarst*, 95 N. H. 40, 42, 43. The loss which occurred to the plaintiff's automobile on July 13 was "an accidental loss" within the meaning of the policy, which contained no exclusion of loss due to negligent or intentional acts of the insured.

To determine whether the "mechanical breakdown" exclusion applies, the cause of the loss must first be established. Was the loss caused by a risk covered by the policy, and if so, was it the intention of the parties that the insurer should be liable for such a loss? It is apparent that the weakness of the frame, whether because of the prior breaks or inadequate repairs, was one of the causes of the loss. As a cause, the breaking of the frame was last in point of time to be set in motion, and most closely preceded the resulting damage. Proximity in time is not necessarily controlling, however. 6 Couch., Insurance, s. 1466. The encounter with the bumps in the road could also be found to be a cause of the damage. Until they were encountered, the hazard that the frame might break was quiescent. It was a part of the "set stage." See *Derosier* v. *Company*, 81 N. H. 451, 464. It was brought into play by passage over the bumps which set in motion the forces causing the collapse. Which of the two concurring causes was the proximate cause of the loss presented a question of fact for the jury. *Prichard* v. *Boscawen*, 78 N. H. 131; *Derosier* v. *Company*, *supra*; *Roberts* v. *Hillsborough Mills*, 85 N. H. 517, 523. The issue was properly submitted, and the verdict of the jury establishes that the bumps in the road were the proximate cause of the hazard which directly produced the loss.

Had the loss resulted solely from the encounter with the bumps no question would be presented concerning the defendant's liability under one or the other of the two coverages afforded by the policy. Since the bumps have been found the proximate cause of the collapse of the frame, the defendant's liability is established, unless the provisions of the exclusion were intended to produce a different result. There is no lack of authority for the proposition that coverage is afforded where an insured risk operates to produce a risk not insured. *Fogarty* v. *Fidelity & Cas. Co.*, 120 Conn. 296. See cases collected in Annotations, 160 A. L. R. 947; 166 A. L. R. 375, 382. See also note, 32 Minn. Law. Rev. 71.

The principle involved may be likened to that applied in cases where the act of a negligent defendant aggravates a preexisting disability of the plaintiff. For the ensuing damage the defendant may be held liable although the consequences of his negligence are enlarged by the weakened condition of the plaintiff. His liability extends not only to expectable results but also to those which are proximately caused thereby, although not normally expectable. *Guevin* v. *Railway*, 78 N. H. 289, 299; *Kenney* v. *Wong Len*, 81 N. H. 427, 434.

In *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 51, Mr. Justice *Cardozo* in construing a policy of insurance, pointed out: "General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." In the later case of *Tonkin* v. *California Ins. Co.*, 294 N. Y. 326, 329, the same court was called upon to construe a policy of insurance affording "comprehensive" coverage but not coverage for collision, in a case where fire caused the operator of an automobile to pull to the side of the road and collide with another vehicle. In holding the defendant liable under the coverage provided, the court applied the test of the *Bird* case and said: "The policy language is definite enough to exclude loss when collision is the primary and exclusive cause, and it would do so here except for the fact that fire—the hazard insured against— was the factor causing the driver to lose control of the vehicle and was so closely associated with it in point of time and character as to constitute the proximate producing cause of the collision." The standard adopted by the New York court is not distinguishable from that established by our own cases. Here the provisions of a policy of insurance are held to mean "what a reasonable person in the position of the insured would have understood them to mean." *Hoyt* v. *Insurance Company*, 92 N. H. 242, 243, and cases cited; *Merchants Mut. &c. Co.* v. *Melcher*, 94 N. H. 174.

Because comprehensive coverage is of recent origin, exclusions like the one in question have received little judicial construction. See 5 Am. Jur., Automobiles, s. 510.5; 171 A. L. R. 264. As we construe the exclusion it is operative only within narrow limits. Damage due and confined to wear and tear or mechanical breakdown is excluded "unless such damage is the result of other loss covered by the policy." The literal meaning of the quoted clause is obscure because of the difficulty of envisioning damage due to wear and tear or mechanical breakdown which could result from other "loss" covered by the policy. Since the policy purports to afford "comprehensive" coverage as well as "collision," to a reasonable man in the position of the insured the language used in the exclusion would mean that the exclusion did not apply when the damage resulted from other "risks" covered by the policy—as for example, collision or theft.

But for this limitation upon the exclusion, the argument that the words "confined to" operate to exclude from coverage only damage to parts previously affected by wear and tear or actually subjected

to mechanical breakdown might be thought to require apportionment of the damages between the parties. Much of the damage suffered was not "confined to" wear and tear though in part "due to" it. But the loss, so far as "due and confined to" wear and tear or mechanical breakdown, was the result of the encounter with the bumps in the road, an "other 'risk' covered by the policy." It follows that by its own terms as we interpret them, the exclusion does not apply and the motions for a nonsuit and directed verdict were correctly denied.

In *Lunn* v. *Insurance Company*, 184 Tenn 584, the language of an identical exclusion was held limited to damage caused "solely" by a mechanical breakdown. The interpretation there given placed no reliance upon the concluding qualification of the exclusion, but emphasized the use of the words "any damage" in conjunction with the words "confined to." The interpretation there adopted would here produce the same result which we reach because of the limitation contained in the concluding clause. In that case the damages suffered resulted from the breaking of a catch on the hood of an automobile, permitting the hood to fly back against the vehicle. The hood as a cause of damage was activated by natural forces set in motion by the mechanical breakdown, an excluded risk. Accordingly mechanical breakdown was held the sole cause of the loss. Here the mechanical breakdown was itself produced by natural forces set in motion by the bumps in the road which constituted an insured risk. The loss occasioned by the insured risk was magnified by the concurring mechanical breakdown, but did not originate with it, and was not due solely to it. Thus although reached upon somewhat different grounds, our conclusions do not conflict with those of the *Lunn* case.

The defendant's exceptions to the instructions to the jury and to the denial of specified requests for instructions are largely disposed of by what has already been said. Negligence on the part of the plaintiff was not an available defense, and the tenth request for instructions was properly denied. The ninth and eleventh requests were equivalent to motions for a directed verdict, and for reasons indicated were properly denied.

There remains for consideration the exception to the receipt in evidence of testimony that the holes encountered by the truck were six to ten inches deep, based upon an opinion reached by a witness who rode over the holes when they were full of water. The admissibility of the testimony was a question to be determined in the discretion of the Trial Court, whose ruling is here final. *Danos* v. *Company*, 94 N. H. 200, and cases cited.

It is unnecessary to pass upon the exception to the instructions that the collision coverage applied.

*Judgment on the verdict.*

All concurred.